FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 23 2018

JEFFREY P. COLWELL
CLERK
_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE [DISTRICT OF COLORADO]

**Tatenda Kuzvinzwa**          )

      ,              )

                    )

     Petitioner,      )

                    )

     v.              )    Case No. _____

'18 - CV - 0 2163

                    )

                    )

Jason Mikesell Sheriff of Teller county Jail ;  )

Kristi Barrows District Director; Kirstjen  )

Nielsen, in his capacity as Secretary of  )

Homeland Security; Jefferson Beauregard  )

Sessions III in his capacity as Attorney General )

of the United States,  )

                    )

                    )

     Respondents.        )

PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO

28 U.S.C. § 2241

**PETITION FOR WRIT OF HABEAS CORPUS**

## PRELIMINARY STATEMENT

1.     This case challenges the government's authority to indefinitely detain a noncitizen without any finding of dangerousness or flight risk. It asks that this Court grant the petitioner release from prolonged immigration detention or a bond hearing before a neutral arbiter.

2.     Petitioner is [caring and responsible young lady who fled her native country Zimbabwe to seek political personal  asylum,]

3.     As of the date of this Petition, petitioner has been detained by Immigration and Customs Enforcement ("ICE") for over 27 months, with no end to petitioner's detention in the reasonably foreseeable future. Petitioner was originally detained and placed in removal proceedings by ICE on or about [05/21/2016].

4.     ICE claims the authority to indefinitely detain petitioner without a bond hearing under the Immigration and Nationality Act ("INA") § 235(b), 8 U.S.C. § 1225(b). In separate subsections, that statute provides for the detention of asylum seekers who pass a credible fear interview "for further consideration of the application for asylum," id. § 1225(b)(1)(B)(ii), as well as detention of all other noncitizens whom an immigration official believes are not "clearly and beyond a doubt entitled to admission for a proceeding under 1229a of this title [removal proceedings before an immigration judge]." id. § 1225(b)(2)(A). Collectively, the Department of Homeland Security ("DHS") refers to these noncitizens as "arriving aliens." 8 C.F.R. § 1.2.

5.     The government interprets § 1225(b) to require mandatory detention without a bond hearing of all arriving aliens, for the indefinite length of time necessary to complete removal proceedings, even if that time becomes unreasonably prolonged. See Matter of X-K-, 23 I. & N. Dec. 731, 732 (BIA 2005) ("There is no question that Immigration Judges lack jurisdiction [for a

bond hearing] over arriving aliens who have been placed in . . . removal proceedings . . . ."); 8

C.F.R. § 1003.19(h)(2)(i)(B) (stating that an immigration judge may not conduct a custody

determination of an "arriving alien").

6.    Petitioner's prolonged, indefinite detention pending removal proceedings violates the

U.S. Constitution's Fifth Amendment because it deprives petitioner of liberty without due

process of law and the Immigration and Nationality Act because it is not authorized by the

statute.

7.    Petitioner therefore respectfully requests that this Court issue a writ of habeas corpus and

order petitioner's release from custody, with appropriate conditions of supervision if necessary.

In the alternative, petitioner requests that this Court conduct or order an immigration judge to

conduct a bond hearing at which (1) the government bears the burden of proving flight risk and

dangerousness by clear and convincing evidence and (2) the reviewing court considers

alternatives to detention that could mitigate risk of flight.

## PARTIES

8.   Petitioner is presently detained at the direction of Respondents at [Teller county Jail  288

Weaverville Rd, Divide, CO 80814 ].

9.   Respondent **[Jason Mikesell]** is named in his official capacity as the warden of the facility

where petitioner is held. In this capacity, he is a legal custodian of petitioner. Respondent's

address is [288 Weaverville Rd, Divide, CO 80814 ].

10.  Respondent **[Kristi Barrows District Director]** is named in his official capacity as the

ICE District Director of [Colorado]. In this capacity, he is a legal custodian of petitioner.

Respondent's address is [12445 E. Caley Avenue

11.  Centennial, CO, 80111].

12. Respondent Kirstjen Nielsen is named in his official capacity as the Secretary of DHS. He is responsible for the administration of the immigration laws. 8 U.S.C. § 1103(a). He routinely transacts business in the [Colorado District] and is legally responsible for Petitioner's detention. As such, he is a legal custodian of Petitioner. Respondent Kelly's address is United States Department of Homeland Security, 3801 Nebraska Ave NW, Washington, DC 20016.

13.     Respondent Jefferson Beauregard Sessions III is named in his official capacity as the Attorney General of the United States. He is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review. 8 U.S.C. § 1103(g). He routinely transacts business in the [District of Colorado] is legally responsible for Petitioner's detention. As such, he is a legal custodian of Petitioner. Respondent Sessions's address is United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

## JURISDICTION

14. Petitioner is detained in the custody of Respondents at Teller county Jail  288 Weaverville Rd, Divide, CO 80814.

15.     This Court has subject matter jurisdiction over this Petition under 28 U.S.C. § 2241 (power to grant habeas corpus) and 28 U.S.C. § 1331 (federal question jurisdiction); the All Writs Act, 28 U.S.C. § 1651; and the Administrative Procedure Act, 5 U.S.C. § 701.

16.     Federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the lawfulness or constitutionality of their detention by ICE. Demore v. Kim, 538 U.S. 510, 516-17 (2003).

4

## VENUE

17. Under 28 U.S.C. § 2241(d), venue properly lies in the [District of Colorado] because

    Petitioner is physically present and in the custody of Respondents within the district. In

    addition, Petitioner's pending removal proceedings are taking place within the district at

    the immigration court located at [3130 North Oakland Street. Aurora, CO, 80010].

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18.     There is no statutory requirement of exhaustion of administrative remedies where a

noncitizen challenges the lawfulness of his detention. See Louisaire v. Muller, 758 F. Supp. 2d

229, 234 (S.D.N.Y. 2010); Garcia v. Shanahan, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009). Any

requirement of administrative exhaustion is therefore purely discretionary.

19.     In making that decision, the Court should consider the urgency of the need for immediate

review. "Where a person is detained by executive order . . . the need for collateral review is most

pressing. . . . In this context the need for habeas corpus is more urgent." Boumediene v. Bush,

553 U.S. 723, 783 (2008) (waiving administrative exhaustion for executive detainees).

20.     Moreover, where the agency has predetermined a dispositive issue, no further action with

the agency is necessary. See, e.g., Monestime v. Reilly, 704 F. Supp. 2d 453, 456-57 (S.D.N.Y.

2010) (holding that administrative challenges to a noncitizen's classification under the

mandatory detention statute would be futile given the agency's precedent on the issue); Garcia,

615 F. Supp. 2d at 180 (same).

21.     The BIA interprets § 1225(b) as mandating detention of arriving aliens pending removal

proceedings. See Matter of X-K-, 23 I. & N. Dec. at 732 ("There is no question that Immigration

Judges lack jurisdiction [for a bond hearing] over arriving aliens who have been placed in . . .

removal proceedings . . . ."). Exhaustion before the BIA would therefore be futile.

22.     Further, "the BIA [Board of Immigration Appeals] does not have jurisdiction to

adjudicate constitutional issues . . . ." (quotations and citation omitted). <u>United States v.</u>

<u>Gonzalez-Roque</u>, 301 F.3d 39, 48 (2d Cir. 2002). Because petitioner raises a constitutional due

process claim in his habeas petition, exhaustion of his due process claims would be futile.

23.     A request for release on humanitarian parole under 8 U.S.C. 1182(d)(5)(A) would also be

futile. Parole review is conducted informally by DHS officers—the jailing authority—by

checking a box on a form that contains no factual findings, no specific explanation, and no

evidence of deliberation. There is no hearing, no record, and no administrative appeal from a

negative parole decision, even to correct manifest errors. <u>See</u> <u>Rodriguez v. Robbins</u>, 804 F.3d

1060, 1081 (9th Cir. 2015), <u>cert. granted sub nom.</u> <u>Jennings v. Rodriguez</u>, 136 S. Ct. 2489, 195

L. Ed. 2d 821 (2016) (identifying denials of parole "based on blatant errors: In two separate

cases . . . officers apparently denied parole because they had confused Ethiopia with Somalia.

And in a third case, an officer denied parole because he had mixed up two detainees' files.");

<u>Nadarajah v. Gonzales</u>, 443 F.3d 1069, 1082 (9th Cir. 2006) (finding that DHS abused its

authority by denying parole). In the absence of administratively enforceable standards, grants of

parole have decreased sharply in recent years. <u>See</u> Human Rights First, Lifeline on Lockdown:

Increased U.S. Detention of Asylum Seekers 13 (2016) (relying on government data to document

a one-third decrease in parole grants between 2012 and 2015).

24.     President Trump has further restricted the already limited use of parole authority by

ordering DHS officials to "end the abuse of parole and asylum provisions" in a January 2017

executive order. <u>See</u> Exec. Order. No. 13,767: Border Security and Immigration Enforcement

Improvements, 82 Fed. Reg. 8793 (Jan. 25, 2017).

25.     Nonetheless, petitioner applied for a Political Asylum request seeking refuge

Respondents denied that request on **[April 20 2016] and also requested humanitarian parole**.

File 208-600-343. Petitioner has therefore exhausted all available administrative remedies.

## STATEMENT OF FACTS

26. Tatenda Kuzvinzwa asylum case was denied as a result of failing to prove if there was any

credible  testimony of torture.Her prolonged detention is a result of failure to to comply

pursuant of which she has always fully complied with a

Every possible was she could even interviews with her embassy and signing all documents

from ICE ._

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

27.     Petitioner re-alleges and incorporates by reference the paragraphs above.

28.     Petitioner's prolonged detention under § 1225(b) without any individualized assessment

of the need for detention deprives petitioner of due process of law. The Court should therefore

order release from unconstitutional detention.

29.     The Due Process Clause of the Fifth Amendment forbids the government from depriving

any "person" of liberty "without due process of law." U.S. Const. amend. V.

30.     "[T]he Due Process Clause applies to all 'persons' within the United States, including

aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v.

Davis, 533 U.S. 678, 693 (2001). For this reason, even "removable and inadmissible aliens are

entitled to be free from detention that is arbitrary and capricious," id. at 721 (Kennedy, J.,

dissenting). That constitutional protection is unaffected by the government's authority to make

rules for "admission" that regulate the immigration status of noncitizens. See 8 U.S.C. §

1101(a)(13)(A) (defining admission as "the lawful entry of the alien").

31.     "A statute permitting indefinite detention of an alien would raise a serious constitutional

problem" under the Fifth Amendment's Due Process Clause. Id. at 690. That serious

constitutional problem is raised by the government's reading of § 1225(b). It interprets the

statute to permit the indefinite detention of a noncitizen whom the government has not found to

be removable or inadmissible, but instead granted the right to remain in the United States

pending removal proceedings after demonstrating a credible fear of persecution to an asylum

officer.

32.     In Zadvydas v. Davis, the Supreme Court rejected the government's argument that its

immigration powers permit it to indefinitely detain noncitizens after the conclusion of removal

proceedings. Id. at 695. Since then, the government has repeated that same argument to justify

prolonged, indefinite detention pending removal proceedings.

33.     Each time, federal courts have roundly rejected it. Every Court of Appeals to consider

prolonged detention under INA § 236(c), 8 U.S.C. § 1226(c)—a statute that, like § 1225(b)

mandates detention of inadmissible noncitizens pending removal proceedings—holds it limited

to a reasonable period by the Due Process Clause. See Sopo v. U.S. Attorney Gen., 825 F.3d

1199 (11th Cir. 2016); Reid v. Donelan, 819 F.3d 486 (1st Cir. 2016); Lora v. Shanahan, 804

F.3d 601 (2d Cir. 2015); Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015); Diop v.

ICE/Homeland Sec., 656 F.3d 221 (3d Cir.2011); Ly v. Hansen, 351 F.3d 263 (6th Cir. 2003).

None of these decisions distinguishes between previously admitted and inadmissible noncitizens.

Instead, they find that due process limits the period that any noncitizen may be held in prolonged mandatory detention pending removal proceedings.

34.     In doing so, they follow Demore v. Kim, 538 U.S. 510, 518 (2003). Demore identified mandatory detention pending removal proceedings as a "brief period," lasting "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."

35.     Thus, in the Second and Ninth Circuits, the reasonable period of § 1226(c) mandatory detention pending removal proceedings ends at six months. Lora, 804 F.3d at 613; Rodriguez, 804 F.3d at 1065. The remaining circuits to have addressed the issue hold detention unreasonable some time after six months, depending on the facts and circumstances of the case, with nine months "straining any common-sense definition of a limited or brief civil detention." Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 477 (3d Cir. 2015).

36.     The only Court of Appeals to consider prolonged detention under § 1225(b) holds that "to avoid serious constitutional concerns, mandatory detention under § 1225(b) . . . must be construed as implicitly time-limited." Rodriguez, 804 F.3d 1060.

37.     Following Rodriguez and Lora, numerous district courts in the Second Circuit hold that due process limits mandatory detention under § 1225(b) to a reasonable period of six months. See, e.g., Ricketts v. Simonse, 2016 WL 7335675 (S.D.N.Y. Dec. 16, 2016); Saleem v. Shanahan, 2016 WL 4435246 (S.D.N.Y. Aug. 22, 2016); Arias v. Aviles, 2016 WL 3906738 (S.D.N.Y. July 14, 2016). They are joined by district courts in other circuits. See, e.g., Ahad v. Lowe, 2017 WL 66829 (M.D. Pa. Jan. 6, 2017); Gregorio-Chacon v. Lynch, 2016 WL 6208264 (D.N.J. Oct. 24, 2016); Damus v. Tsoukaris, 2016 WL 4203816 (D.N.J. Aug. 8, 2016); Bautista

v. Sabol, 862 F. Supp. 2d 375, 377 (M.D. Pa. 2012); Maldonado v. Macias, 150 F.Supp.3d 788 (W.D. Tex. 2015).

38.    The ability to apply for humanitarian parole under 8 U.S.C. 1182(d)(5)(A) does not provide due process for noncitizens detained under § 1225(b). Parole does not provide a neutral forum to contest the necessity of ongoing detention. Instead it is a purely discretionary process, administered by the jailer. Neither the detained noncitizen nor counsel are provided an in-person hearing to contest facts leading to the parole decision. And no review of that decision is available. See Rodriguez v. Robbins, 715 F.3d 1127, 1144 (9th Cir. 2013) (describing parole process).

39.    Moreover, release on parole is only available for "urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R. § 212.5(b). Neither of those criteria evaluate the constitutionally permissible rationales for continued, prolonged detention during removal proceedings: whether the detained noncitizen is a flight risk or danger to her community. See R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 188 (D.D.C. 2015) ("The Zadvydas Court clearly identified a pair of interests that can, under certain circumstances, suffice to justify the detention of noncitizens awaiting immigration proceedings: 'preventing flight' and 'protecting the community' from aliens found to be 'specially dangerous.'") (citing Zadvydas v. Davis, 533 U.S. at 690–92)).

40.    Finally, parole was also available to inadmissible noncitizens who challenged prolonged detention under § 1226(c). Yet every Court of Appeals to consider § 1226(c) has nonetheless ruled it limited to a reasonable period by the Due Process Clause. The ability to apply for parole is therefore an inadequate substitute for due process.

41.     Petitioner's prolonged, indefinite detention under § 1225(b) violates the Fifth

Amendment by depriving him of liberty without due process of law. This Court should therefore

order his release, with appropriate conditions of supervision if necessary. See, e.g., Nadarajah v.

Gonzales, 443 F.3d 1069, 1084 (9th Cir. 2006); Madrane v. Hogan, 520 F.Supp.2d 654 (M.D.

Pa. 2007); Victor v. Mukasey, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Nunez–Pimentel v.

U.S. Dep't of Homeland Security, 2008 WL 2593806 (M.D. Pa. June 27, 2008) (ordering release

from prolonged detention pending removal proceedings).

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT § 235(b), 8 U.S.C. § 1225(b)

42.     Petitioner re-alleges and incorporates by reference the paragraphs above.

43.     Under the statutory interpretation doctrine of constitutional avoidance, the Court should

construe § 1225(b) as limited to a reasonably brief period, extendable only if the government

shows justification for detention at a bond hearing.

44.     Though the government's interpretation of § 1225(b) as permitting indefinite mandatory

detention is unconstitutional, "[w]hen the validity of an act of the Congress is drawn in question,

and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court

will first ascertain whether a construction of the statute is fairly possible by which the question

may be avoided." Crowell v. Benson, 285 U.S. 22, 62 (1932); see also Zadvydas, 533 U.S. 678 at

689 (citing Crowell). This doctrine of statutory interpretation is known as constitutional

avoidance.

45.     "[T]he Supreme Court has instructed that, where one possible application of a statute

raises constitutional concerns, the statute as a whole should be construed through the prism of

11

constitutional avoidance." <u>Rodriguez v. Robbins</u>, 715 F.3d 1127, 1141 (citing <u>Clark v. Martinez</u>, 543 U.S. 371, 380 (2005)). "Thus, the dispositive question is not whether the government's reading of § 1225(b) is permissible in some (or even most) cases, but rather whether there is any single application of the statute that calls for a limiting construction." <u>Id.</u>

46.     In <u>Martinez</u>, the Court analyzed § 1231(a)(6), a statute it had previously read as a matter of constitutional avoidance to limit mandatory detention after the conclusion of removal proceedings to a presumptively reasonable period of six months. <u>Zadvydas v. Davis</u>, 533 U.S. 678. The same statute applied to both admitted and inadmissible noncitizens, but the government argued that the same limit on detention did not apply to inadmissible noncitizens because they were not entitled to the same constitutional protections. <u>Martinez</u>, 543 U.S. at 380.

47.     The text of the statute did not distinguish between the two classes, however, and "[t]o give these same words a different meaning for each category would be to invent a statute rather than interpret one." <u>Id.</u> at 378. Because the same statutory text applied to both groups, and detention for more than six months raised constitutional concerns for at least the admitted noncitizens, every noncitizen subject to the statute was entitled to the same reading limiting mandatory detention. "The lowest common denominator, as it were, must govern." <u>Id.</u> at 380.

48.     The government reads § 1225(b) to permit the prolonged detention without a bond hearing of all "arriving aliens," 8 C.F.R. § 1.2., including both asylum seekers and certain lawful permanent residents ("LPR") who depart the country and seek admission upon their return. INA § 101(a)(13)(C), 8 U.S.C. § 1101(a)(13)(C) (identifying LPRs classified as arriving aliens when returning to the United States after travel abroad); 8 C.F.R. § 1003.19(h)(2)(i)(B) (depriving an immigration judge of jurisdiction over a bond hearing for arriving aliens in removal proceedings).

49.     As explained above in the First Claim for Relief, arriving asylum seekers are entitled to

be free from arbitrary and capricious detention under the Due Process Clause. Even assuming

*arguendo* they were not, however, LPRs are entitled to due process in prolonged detention

because "once an alien gains admission to our country and begins to develop the ties that go with

permanent residence his constitutional status changes accordingly." Landon v. Plasencia, 459

U.S. 21, 32 (1982).

50.     In Plasencia, the Supreme Court ruled that an LPR seeking readmission after a trip

abroad and charged as "excludable" (the former term of art for "inadmissible" under then-current

immigration laws), could nonetheless "invoke the Due Process Clause on returning to this

country . . . ." Id. Because an LPR's due process right is constitutional in nature, it may not be

stripped by mere statutory designation as an "arriving alien." See Kwong Hai Chew v. Colding,

344 U.S. 590, 600 (1953) (in the case of a returning LPR, holding that "[f]rom a constitutional

point of view, he is entitled to due process without regard to whether or not, for immigration

purposes, he is to be treated as an entrant alien").

51.     Section 1225(b) would therefore "raise a serious constitutional problem," Zadvydas, 533

U.S. at 690, if read to deny a bond hearing to LPRs held as arriving aliens in prolonged

detention. Thus, as a matter of constitutional avoidance, the statute must be read to require a

bond hearing when detention becomes unreasonably prolonged. Ricketts v. Simonse, 2016 WL

7335675; Arias v. Aviles, 2016 WL 3906738 *4-*10.

52.     Moreover, because the text of § 1225(b) does not distinguish between LPRs and other

noncitizens charged as arriving aliens, LPRs are the statute's "lowest common denominator."

Martinez, 543 U.S. at 380. Section 1225(b) must therefore be read to grant all noncitizens held as

arriving aliens the same due process protections afforded to LPRs in unreasonably prolonged

detention. <u>Rodriguez v. Robbins</u>, 715 F.3d 1127, 1142-43, at \*1; <u>Saleem v. Shanahan</u>, 2016 WL 4435246, at \*3-\*5.

53.     The only Court of Appeals to address detention under § 1225(b) holds that it becomes unreasonably prolonged at six months. <u>Rodriguez</u>, 715 F.3d at 1144. Such a bright-line limit follows the practice of both the Supreme Court and Second Circuit of limiting mandatory immigration detention to the presumptively reasonable period of six months. <u>Zadvydas</u>, 533 U.S. at 701 ("We do have reason to believe . . . that Congress previously doubted the constitutionality of detention for more than six months."); <u>Lora v. Shanahan</u>, 804 F.3d 601, 616 (2d Cir. 2015) ("[W]e hold that[] in order to avoid the constitutional concerns raised by indefinite detention, an immigrant . . . must be afforded a bail hearing before an immigration judge within six months of his or her detention." This Court should therefore find that petitioner, whose mandatory detention exceeds six months, is entitled to a bond hearing.

54.     Petitioner's detention is also unreasonably prolonged based on the facts and circumstances of his case, including the overall length of his detention, the promptness of proceedings, the complexity of the case, the reasonable foreseeability of continued, lengthy litigation, and the conditions of confinement. <u>Chavez-Alvarez v. Warden York Cty. Prison</u>, 783 F.3d 469, 474-478 (outlining factors that govern when mandatory detention becomes prolonged).

55.     "[S]ometime after the six-month timeframe considered by <u>Demore</u>, and certainly by the time [a noncitizen] ha[s] been detained for one year," mandatory detention is unreasonable. <u>Id.</u> at 478.

56.     Moreover, delay caused by "individual actions by various actors in the immigration system, each of which takes only a reasonable amount of time to accomplish, can nevertheless

result in the detention of a removable alien for an unreasonable, and ultimately unconstitutional, period of time." Diop v. ICE/Homeland Sec., 656 F.3d 221, 223.

57.     The reasonableness of ongoing detention must also consider "whether an alien challenges aspects of the Government's case that present real issues, for example: a genuine factual dispute; poor legal reasoning; reliance on a contested legal theory; or the presence of a new legal issue." It is impermissible to "effectively punish these aliens for choosing to exercise their legal right to challenge the Government's case against them by rendering the corresponding increase in time of detention as reasonable." Chavez-Alvarez, 783 F.3d at 476.

58.     The reasonable foreseeability of continued, lengthy litigation is also relevant to whether Mr. [client]'s current detention is constitutional. Id. at 477-78 (noting that the government "could have reasonably predicted that [the noncitizen's] appeal would take a substantial amount of time, making his already lengthy detention considerably longer").

59.     Finally, this Court "cannot ignore the conditions of confinement." Id. at 478. Where immigration detention takes place in a penal setting, prolonged detention is more likely to be unconstitutional. "Merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures. As the length of the detention grows, the weight given to this aspect of [a noncitizen's] detention increases." Id. (internal citations omitted).

60.     Petitioner's prolonged detention raises all of these concerns.

61.     Under either a bright-line rule or the facts and circumstances of this case, petitioner's continued detention is unreasonably prolonged. This Court should therefore conduct a bond hearing at which (1) the government bears the burden of proving flight risk and dangerousness by clear and convincing evidence and (2) the Court considers alternatives to detention that could mitigate flight risk. See Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 271 (3d Cir. 2012)

(stating that "Leslie's appeal will be remanded to the District Court with instructions to conduct

an individualized bond hearing as required by Diop"); Rodriguez, 804 F.3d 1060, 1086-89

(outlining constitutionally adequate procedural protections at a prolonged detention bond

hearing). In the alternative, the Court should order an immigration judge to conduct the bond

hearing.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT § 236(a), 8 U.S.C. § 1226(a)

62.     Petitioner re-alleges and incorporates by reference the paragraphs above.

63.     As a matter of statutory interpretation, this Court should hold that § 1225(b) is limited to

the period between a noncitizen's arrest as an arriving alien and the commencement of her

removal proceedings before an immigration judge. Such an interpretation is supported by the

text, purpose, and overall construction of the statute, the doctrine of constitutional avoidance,

and the government's own practice of limiting mandatory detention of other recently arrived

noncitizens to the period before removal proceedings commence. The Court should therefore

find that petitioner's detention pending removal proceedings is authorized not by § 1225(b), but

by the discretionary detention statute at § 1226(a), entitling petitioner to an immediate bond

hearing before an immigration judge.

64.     The plain text of § 1225(b) mandates detention of arriving aliens only for the period

between their arrest and before they are referred to an immigration judge for removal

proceedings. The two subsections of § 1225(b) at issue here permit detention only "*for* further

consideration of the application for asylum," 8 U.S.C. § 1225(b)(1)(B)(ii) and "*for* a proceeding .

. . ." Id. § 1225(b)(2)(a). Neither provision governs detention beyond that point, much less

pending completion of removal proceedings. See Webster's Third New International Dictionary 886 (1993) (defining "for" to mean "as a preparation toward . . . or in view of"). Pending removal proceedings, detention is authorized by section 1226(a), entitling Mr. [client] to a bond hearing. See Matter of X-K-, 23 I. & N. Dec. at 731 ("Immigration Judges have custody jurisdiction over aliens in . . . removal proceedings . . . .")

65.     Where Congress intended to authorize detention pending completion of an administrative proceeding, it unambiguously said so. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (stating that a noncitizen "shall be detained *pending* a final determination of credible fear of persecution and, if found not to have such a fear, until removed"); id. § 1226(a) ("an alien may be arrested and detained *pending* a decision on whether the alien is to be removed from the United States). (emphases added). Cf. Ratzlaf v. United States, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears.").

66.     "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Nken v. Holder, 556 U.S. 418, 430 (2009) (internal citations and alterations omitted). This is "particularly true here" where the provisions at issue were "enacted as part of a unified overhaul" of the statute under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Id. at 430-31.

67.     The overall construction of the statute also supports a reading that limits § 1225(b) detention to the period before removal proceedings commence. Cf. United States v. Witkovich, 353 U.S. 194, 199 (1957) ("A restrictive meaning for what appear to be plain words may be indicated by the Act as a whole . . . ."). Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Section 1225(b)

is titled "Inspection of Applicants for Admission." The subsections at issue here are titled

"Asylum Interviews: Referral of certain aliens," 8 U.S.C. § 1225(b)(1)(B)(ii), and "Inspection of

other aliens: In general," id. § 1225(b)(2)(A). By their plain language, none of these sections

address detention authority pending removal proceedings. Rather, they address only detention

pending inspection and referral to subsequent removal proeedings. Authority for mandatory

detention pending removal proceedings appears instead in 8 U.S.C. § 1226, in a section

appropriately titled "Apprehension and detention of aliens." That section does not authorize

mandatory detention pending removal proceedings for arriving aliens.

68.     Where Congress intended to authorize mandatory detention of arriving aliens past the

inspection and referral process, it provided specific statutory authority to do so. In §

1225(b)(1)(B)(iii)(IV), titled "Mandatory Detention," Congress provided for the detention of a

noncitizen "pending a final determination of credible fear of persecution and, if found not to have

such a fear, until removed." If Congress had intended to subject all arriving aliens to mandatory

detention beyond the inspection and referral process, the specific mandate in §

1225(b)(1)(B)(iii)(IV) would be superfluous. "It is a cardinal principle of statutory construction

that a statute ought . . . to be so construed that, if it can be prevented, no clause, sentence, or

word shall be superfluous, void, or insignificant." TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001)

(internal quotations omitted).

69.     Moreover, as explained above in the Second Claim for Relief, the doctrine of

constitutional avoidance requires this Court to "first ascertain whether a construction of the

statute is fairly possible by which the [constitutional] question may be avoided." Crowell v.

Benson, 285 U.S. 22, 62. In light of the text and overall construction of § 1225(b), as discussed

above, the statute may be fairly construed to limit mandatory detention to the period before

removal proceedings commence. The Court must do so in order to avoid the constitutional question raised by the government's reading.

70.     Petitioner's interpretation of § 1225(b) also accords with the government's own practice of detaining other recent arrivals under § 1226(a) once they pass a credible fear interview and their removal proceedings have commenced. Both noncitizens who present themselves at the border and those who enter without inspection and are subsequently arrested near the border are initially detained under § 1225(b)(1)(B)(ii) for expedited removal proceedings. See Matter of X-K-, 23 I. & N. Dec. 731, 734.

71.     Once the government determines that either arriving aliens or entrants without inspection have a credible fear of persecution, it refers them to nonexpedited removal proceedings. Yet for entrants without inspection alone, the government detains under § 1226(a) once removal proceedings commence. Id. This entitles entrants without inspection, but not those who present themselves to an officer to seek asylum, to an immediate bond hearing.

72.     The text of § 1225(b) does not distinguish between entrants without inspection and those who, like petitioner, present themselves at the border. It therefore must be construed consistently to be limited to the period before removal proceedings commence. Clark v. Martinez, 543 U.S. at 378 ("To give these same words a different meaning for each category would be to invent a statute rather than interpret one.").

73.     Finally, a construction of § 1225(b) as limited to before commencement of removal proceedings avoids the absurd result of incentivizing entry without inspection. According to the government's reading of § 1225(b), Congress incentivized asylum seekers to enter without inspection rather than present themselves at the border by providing access to bond hearings during removal proceedings for only the first class. It is improbable that Congress intended such

19

a result with § 1225(b), because the purpose of mandatory detention is "preventing . . . aliens from fleeing prior to . . . their removal proceedings[,]" Demore v. Kim, 538 U.S. 510, 527–28, not avoiding removal proceedings altogether by entering without inspection.

74.     This Court should therefore hold that petitioner's detention pending removal proceedings is governed by § 1226(a), entitling him to a bond hearing upon request before an immigration judge.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;

2) Issue a Writ of Habeas Corpus ordering respondents to release petitioner immediately, on reasonable conditions of supervision if necessary;

3) In the alternative, conduct a bond hearing or remand to the immigration judge for a bond hearing at which (1) the government bears the burden of proving flight risk and dangerousness by clear and convincing evidence and (2) alternatives to detention that could mitigate flight risk are considered;

4) In the alternative, hold that petitioner's detention is governed by 8 U.S.C. § 1226(a), entitling petitioner to a bond hearing upon request before an immigration judge;

5) Award petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, other statute; and

6) Grant such further relief as the Court deems just and proper.


Tatenda Kuzvinzwa

Dated:08/02/2018

21